IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | CIVIL ACTION NO. 7:13-CV-00203 |
| Plaintiff, | ) ) | |
| v. | ) ) | COMPLAINT |
| NEWPORT NEWS INDUSTRIAL CORPORATION, | ) ) ) | |
| Defendant. | ) ) ) | **JURY TRIAL DEMAND** |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of retaliation, and to provide appropriate relief to Julia Horton ("Horton") who was adversely affected by such practices. As alleged with greater particularity below, Plaintiff, Equal Employment Opportunity Commission (the "EEOC" or "Commission"), alleges that Defendant, Newport News Industrial Corporation ("Defendant"), discriminated against Horton by discharging her in retaliation for complaining about being subjected to a hostile work environment based on her gender (female).

JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of North Carolina, Southern Division.

## PARTIES

3. Plaintiff, the Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4. At all relevant times, Defendant has continuously been a Virginia corporation authorized to do business in the state of North Carolina, and the city of Southport, North Carolina, and has continuously had at least fifteen employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, Horton filed a charge of discrimination with the Commission alleging violations of Title VII by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. On or about December 2, 2010, Defendant engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. §2000e-3(a) when it terminated Horton in retaliation for complaining about being subjected to a hostile work environment based on her gender (female).

2

8. Defendant hired Horton on September 27, 2010 as a planner to assist with a nuclear plant outage at the Brunswick Nuclear Power Plant in Southport, North Carolina. Horton was the only female in her department.

9. On November 15, 2010, Horton complained to Defendant's staffing representative and recruiter (female) (the "Staffing Representative") that her male Site Superintendent (the "Superintendent") was treating her in an aggressive and intimidating manner because she is a woman. More particularly, Horton told the Staffing Representative the Superintendent treated her in a condescending and bullying fashion, and "nit-picked" her work. Horton said the Superintendent would belittle her education and knowledge base in front of her male peers on a regular basis. Further, she told the Staffing Representative that the Superintendent was sarcastic in tone whenever he spoke to her, and he tried to make her feel ignorant and incompetent. Horton further told the Staffing Representative she felt like she could do nothing right in the Superintendent's opinion, simply because she is a woman. Horton told the Staffing Representative that the Superintendent greeted the men at the worksite with a pat on the back, and a good morning greeting, whereas he would ignore her and not greet her in any way. Horton further told the Staffing Representative that she believed the Superintendent was treating her disrespectfully because she is a woman; that he hated women based on the way he treated her (Horton); and that he seemed to have a real problem with women.

10. In response to Horton's complaint, the Staffing Representative escalated Horton's complaint to her boss, the Manager of Support Field Operations.

11. As the result of Horton's complaint, on or about November 16, 2010, Defendant inserted another direct site supervisor (the "Supervisor"), into Horton's chain of command. That same day, Horton made the Supervisor aware of her complaints about the Superintendent

because although the Supervisor was now her direct supervisor, the Superintendent remained in her supervisory chain of command. At that time, Horton provided the Supervisor the same details regarding the Superintendent's conduct that she provided to the Staffing Representative. In response to her complaint, the Supervisor told Horton that he would inform his superiors about her complaint.

12. On or about November 21, 2010, the Supervisor contacted Horton by telephone and told her that the Superintendent and Defendant's Operations Manager said Horton needed to talk directly to the Superintendent about her complaint. Horton told the Supervisor she would not agree to talk directly to the Superintendent regarding her complaints of discrimination about him.

13. On or about November 22, 2010, Horton received a telephone call from the Operations Manager who asked her about her complaint. Horton again reiterated her complaints about the Superintendent's conduct toward her, and how she believed it was because of her gender. On November 23, 2010, at the request of the Operations Manager, Horton sent an email to him outlining some of her concerns.

14. On or about November 29 and November 30, 2010, Defendant's Vice President/General Manager ("VP/GM") conducted an investigation into Horton's complaint. The VP/GM interviewed Horton on November 30, 2010. During this interview, Horton again said she believed she was being subjected to a hostile work environment by the Superintendent because she is a woman. She reiterated her previous complaints to the Staffing Representative and the Supervisor; she made clear to the VP/GM that she believed the Superintendent's hostile conduct toward her was because she is a woman; and she asked the VP/GM if the Superintendent hated women.

4

Case 7:13-cv-00203-BO    Document 1    Filed 09/17/13    Page 4 of 7

15. On December 2, 2010, approximately 17 days after Horton first complained of the Superintendent's conduct, and approximately two days after the VP/GM completed his investigation into Horton's complaint, the VP/GM discharged Horton.

16. Horton reasonably believed that the Superintendent's conduct toward her, as described above in paragraph 9 above, was based on her gender because Horton did not observe the Superintendent act in those ways toward her male co-workers. Defendant discharged Horton because she complained of conduct that she reasonably believed was gender-based harassment and/or disparate treatment in violation of Title VII.

17. The effect of the practices complained of above has been to deprive Horton of equal employment opportunities and otherwise adversely affect her status as an employee because of her participation in a protected activity.

18. The unlawful employment practices complained of above were intentional.

19. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Horton.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from retaliating against employees who oppose employment discrimination, make a charge of employment discrimination, or participate in an investigation of employment discrimination.

B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for employees who oppose unlawful discrimination, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Julia Horton whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of the unlawful employment practices described above, including but not limited to reinstatement or front pay.

D. Order Defendant to make Julia Horton whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to, medical expenses, job search expenses, and any other pecuniary losses in amounts to be determined at trial.

E. Order Defendant to make Julia Horton whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem and loss of civil rights, in amounts to be determined at trial.

F. Order Defendant to pay Julia Horton punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

DATED this 17th day of September, 2013.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
Equal Employment Opportunity Commission
131 M Street, NW
Washington, D.C.  20507

/s/ Lynette A. Barnes
LYNETTE A. BARNES (NC Bar 19732)
Regional Attorney

/s/ Randall D. Huggins
RANDALL D. HUGGINS
Senior Trial Attorney (OK Bar No. 17875)
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Charlotte District Office
129 West Trade Street, Suite 400
Charlotte, North Carolina 28202
Telephone:  704.954.6470
Facsimile:  704.954-6412
Email:  randll.huggins@eeoc.gov

**ATTORNEYS FOR PLAINTIFF**